## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERRENCE K. WILLIAMSON,<br>  11111 Gunpowder DRIVE<br>  Ft. Washington, MD 20744,<br><br>      Plaintiff,<br><br>         v.<br><br>CONDOLEEZZA RICE,<br>  Secretary Of State<br>  2201 C Street, N.W.<br>  Washington, D.C.  20520,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civ. Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.)  This is an action by Terrence K. Williamson, an exceptionally capable African American Senior Foreign Service Officer who was passed over for a position of singular importance in the U.S. Department of State, Chief Information Security Officer, and had his future promotional opportunities greatly impaired by defendant, in particular Under Secretary for Management Henrietta Fore and Chief Information Officer James Van Derhoff, on account of race discrimination and retaliation.

2.)  Mr. Williamson was the most qualified member of the Department of State's Senior Foreign Service for selection as Chief Information Security Officer when it was scheduled to be vacant in 2006, and had the categorical endorsement of the out-going incumbent in the position.

3.) Van Derhoff himself, upon being designated Chief Information Officer in the fall of 2005, stated at an organizational conference that Mr. Williamson was the strongest candidate for the position, but that there was no need to select Mr. Williamson at that time because he was already on board as Deputy Executive Director of Van Derhoff's organization.

4.) Rather than select Mr. Williamson when the Chief Information Security Officer position was vacated, Fore and Van Derhoff reclassified the position out of the Senior Foreign Service to the Senior Executive Service and refused to release Mr. Williamson from his acting assignment. These actions made Mr. Williamson ineligible for the position and made it possible for Fore and Van Derhoff to fill the position without competition with a far less qualified non-minority employee of the Agency for International Development.

5.) Both before and upon his elimination, Mr. Williamson formally sought to be relieved of his assignment in Van Derhoff's organization, in order to prevent opportunities for promotion or career advancement other than Chief Information Security Officer from being impaired.

6.) On pretextual grounds, Van Derhoff denied Mr. Williamson's request even though Mr. Williamson's office was slated to be abolished, which eliminated Mr. Williamson for career enhancing opportunities in the Senior Foreign Service in Van Derhoff's organization and elsewhere in the State Department.

7.)   Mr. Williamson has initiated this action to challenge defendant's unlawful actions under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16; and seeks:  a.) declaratory and injunctive relief; b.) compensatory damages; c.) and backpay.    Mr. Williamson also seeks an award of the attorneys' fees and costs incurred in the prosecution of this action and the administrative complaints process which preceded it.

## Parties, Jurisdiction, And Venue

8.)   Plaintiff Terrence K. Williamson is an African American man and a member of the Senior Foreign Service in the U.S. Department of State.   Mr. Williamson served as the Deputy Executive Director and acting Executive Director of the Bureau of Information Resource Management during the actions that gave rise to this Complaint and resides at the address recited in its caption.

9.)   Defendant Condoleezza Rice is the Secretary of State, the Cabinet official who heads the Department of State, and is sued in her official capacity.   The Department of State is a part of the Executive Branch of the federal government, the mission of which includes conducting the foreign, diplomatic affairs of the United States.

10.)  Jurisdiction of this Court is based upon 28 U.S.C. §1332; and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §§2000e-2, 3).  Venue lies in this district pursuant to 28 U.S.C. §1391, and 42 U.S.C. §2000e-16 (incorporating by reference

42 U.S.C. §2000e-5(f)(3)), because the actions of defendant at issue occurred in this judicial district, where plaintiff would have been employed but for defendant's unlawful conduct.

## Statement Of Facts

### Background

14.) Mr. Williamson is and was, at all times relevant, an officer in the Senior Foreign Service employed by the U.S. Department of State. Congress created the Senior Foreign Service in 1980 in order to strengthen and improve the Foreign Service. 22 U.S.C. §3910. Membership in the Senior Foreign Service is limited to highly experienced Foreign Service officers who possess strong policy formulation capabilities, outstanding executive leadership qualities, and highly developed foreign area expertise.

15.) Mr. Williamson became a Senior Foreign Service officer in September of 2005, after an intense competitive selection process. At that time, Mr. Williamson was only the second African American male to achieve the Senior Foreign Service level in the Information Technology ("IT") field. He was initially appointed to the Foreign Service in 1986.

16.) Throughout his entire career, both as an officer in the Senior Foreign Service and the Foreign Service, Mr. Williamson has repeatedly and successfully faced rigorous examination by review Boards at the Department of State that require officers to continue to advance and maintain exceptional performance under penalty of being removed. Doing so was crucial

to Mr. Williamson's career, because Senior Foreign Service officers have only six years to earn promotions under penalty of being retired involuntarily.

17.) Prior to the actions that gave rise to this Complaint, Mr. Williamson served with distinction in many positions, including the Director of Information Resources Management at the State Department's Embassies in Panama, the Ivory Coast, and Senegal. His experience includes playing key roles in the large scale evacuation of American and third country nationals from war-torn Liberia; the massive draw-down of the U.S. presence in Panama following consummation of the Panama Canal Treaty; and being one of the early pioneers to provide personal computers and training to local African staff at embassies in West Africa. Mr. Williamson also served as a Regional Desk Officer and Division Chief. In addition Mr. Williamson has held senior positions in several high-visibility agency-wide initiatives, including the Foreign Affair Systems Integration pilot, which preceded the current State Messaging Archive Retrieval Toolset ("SMART"); and the project that followed the creation of the Information Assurance office in the Department of State. In both cases Mr. Williamson's performance was lauded by the Department and in one case the Executive Office of the President.

18.) Mr. Williamson is a graduate of the National Defense University's Advanced Management program, holds a Masters Degree in Information Management from Syracuse University, and holds a Bachelor of Arts degree in Information Technology from the

Catholic University of America.  Mr.  Williamson also holds many prestigious professional certifications, including Certified Information Systems Security Professional; Certified Information Security Manager; Department of Defense 40-11 Information Assurance certificate; and the Chief Information Officer's certificate.

19.) In all of his positions with the Department of State, Mr. Williamson's performance has been recognized as distinguished and his conduct has been beyond reproach.  Mr. Williamson has been awarded many commendations and accolades for his service, including the Department's Superior Honor Award, multiple Meritorious Honor awards and performance pay increases.

<u>**Organization of the IRM Bureau**</u>

20.) Mr.  Williamson was selected to serve as Deputy Executive Director of the Information Resources ("IRM") Bureau of the Department of State on May 15, 2005.  Effective January 29, 2006, Mr. Williamson began serving as the acting Executive Director of the IRM Bureau.

21.) The IRM Bureau is one of the largest functional Bureaus in the Department of State.  It oversees a worldwide staff of approximately 8,000 Foreign Service, civil service and contract employees, and manages an annual budget of approximately $1 billion.

22.) The functions of the IRM Bureau include management and oversight of operations supporting all classified and unclassified record communications; classified and unclassified

computer and telecommunications systems; and mail and diplomatic pouch support at over 300 locations, foreign and domestic.

23.) The IRM Bureau is headed by the Chief Information Officer ("CIO") of the Department of State. There are CIO positions within each Department of the Executive Branch, products of the Clinger-Cohen Act, Pub. Law No. 104-106, and Presidential Executive Order No. 13011, 61 Fed. Reg. 37657 (July 18, 1996).

24.) The functions of the CIO at State, like counter-part CIO's in other departments, include being accountable for information resources management activities within the Department of State; advising the Secretary of State on the design, development, and implementation of the State's information systems; participating in the investment review process for information systems; and monitoring and evaluating the performance of information systems.

25.) The IRM Executive Office oversees IRM program, resource and management activities, including IRM planning, budgeting, human resources, administrative services, procurement, and internal computer systems. It has a staff of approximately 90 full-time equivalent employees and manages a budget of approximately $400 million.

26.) As Deputy Executive Director of IRM, Mr. Williamson was the second senior-most manager in the Executive Office; had approximately 88 subordinates under his supervision, including eight direct reports charged with overseeing Program Analysis,

Financial Management, Human Resources, Administrative Services, Procurement and desktop Systems; and enjoyed significant professional exposure to senior level officials and colleagues throughout the State Department.

### Chief Information Security Officer

27.) Among the officials that report directly to the State Department's CIO, is the Department's Chief Information Security Officer, who heads the Information Assurance ("IA") office.

28.) The functions of the IA office include ensuring that all information technology systems of the Department of State and the information transmitted through those systems are secure against infiltration and attack; setting policies and procedures to accomplish this mission; and managing related training and educational programs.

29.) The position of Chief Information Security Officer was created by the Federal Information Security Management Act, Pub. Law No. 107-347 (2002), for the purpose of providing information security protections, commensurate with the risk and magnitude of the harm resulting from unauthorized access, use, disclosure, disruption, modification, or destruction of, electronic information and information systems in federal agencies. The predecessor position, created by the Computer Security Act of 1987, Pub. Law No. 100-235, and subsequent legislation, was called the Senior Agency Information Security Officer and filled by the Deputy Assistant Secretary for Countermeasures and

Information Security in the Bureau of Diplomatic Security who reported directly to the CIO.

30.) The Chief Information Security Officer at the Department of State is responsible for information security policies and programs governing a wide variety of issues throughout the Department. The activities of the Chief Information Security Officer have a major impact on Departmental operations and intergovernmental activities, and require frequent interaction at both the Assistant and Under Secretary of State levels internally and externally with other federal and commercial organizations. The Chief Information Security Officer provides testimony to Congressional committees and staffs; speaks on behalf of the Department of State to the Office of Management and Budget and the National Institutes of Standards and Technology on information security issues, as well as commercial entities; and serves on inter-agency working groups addressing security issues. The Chief Information Security Officer balances on a day-to-day basis conflicts between operations and security at the Department of State.

31.) The electronic communications and information which the Chief Information Security Officer is charged with protecting, along with overseeing related activities by the Bureau of Diplomatic Security and other IRM elements, include communication by, to, and between the Secretary of State and other cabinet-level appointees; political, civilian, and military officials and contractors of the federal government;

governmental, private and non-profit organizations with which such individuals are affiliated; their counterparts in foreign governments and countries and international organizations; and their counterpart organizations, as well.

32.) The foregoing communications are both classified and unclassified; are routinely comprised of diplomatic cables, directions, and reports; and frequently contain information vital to the foreign, domestic, and commercial affairs of the United States.

**Endorsement As Chief Information Security Officer Candidate**

33.) When Mr. Williamson was first selected for the position of Deputy Executive Director of the IRM Bureau in May of 2005, he was a Foreign Service Officer.

34.) In September of 2005, after meeting rigorous selection criteria, Mr. Williamson was appointed to the Senior Foreign Service and became eligible for reassignment or selection as the Chief Information Security Officer at its designated grade. Securing such a position was a necessary step in Mr. Williamson's career advancement and to avoid involuntary retirement from the Senior Foreign Service.

35.) Because the position as Deputy Executive Director of the IRM Bureau was not a Senior Foreign Service level position, Mr. Williamson was keenly interested in reassignment to the Chief Information Security position or another at grade position in the Senior Foreign Service position.

36.) For this reason, and because of his interest in and qualifications for becoming Chief Information Security Officer, Mr. Williamson specifically expressed his interest in the position to Van Derhoff shortly after he became CIO-designate in the fall of 2005, and continued to do so over the coming months.

37.) At or about the same time, the then-incumbent Chief Information Security Officer Jane Scott Norris, became scheduled for a new assignment. In March of the following year, she was appointed as Dean of the School of Applied Information Technology of the Foreign Service Institute.

38.) Ms. Norris had been Mr. Williamson's direct supervisor between 2003 and 2005, viewed him as the best candidate to succeed her as Chief Information Security Officer, and endorsed him without qualification to Van Derhoff to be her successor.

39.) The former Executive Director of the IRM Bureau, Robert Byrnes, also viewed Mr. Williamson's performance as Deputy Executive Director to have been exceptional, results oriented, and very effective.

40.) Ms. Norris made her opinions of Mr. Williamson known to Jay Anania while he was acting CIO and to Van Derhoff shortly after he became CIO-designate in September of 2005. Mr. Anania endorsed Mr. Williamson as an excellent candidate for the CISO position in Mr. Williamson's performance evaluation for the 2005/2006 cycle.

41.) In November of 2005, while serving as CIO-designate, Van Derhoff convened an IRM organizational conference in Vienna,

Austria.    During the conference, Van Derhoff held a meeting in his private suite to announce his selections for most senior IRM positions.    In attendance were approximately ten senior IRM officials, including the incumbent Chief Information Security Officer Ms. Norris, the former IRM Executive Director Mr. Byrnes, and Mr. Williamson.

42.) At the meeting, Van Derhoff stated that Mr. Williamson was the strongest candidate to become Chief Information Security Officer.    Van Derhoff further stated that because Mr. Williamson was already assigned to the IRM Bureau, and since the effective date of Ms. Norris' reassignment was not yet known, there was no need to make a decision about the next Chief Information Security Officer at that time.    Mr. Williamson at that time was the only member in the entire Senior Foreign Service with the requisite skills, experience and professional certifications considered necessary to serve as Chief Information Security Officer, and the best qualified candidate for the position.

**Elimination From Consideration And Selection As
Chief Information Security Officer
And Other Career-Enhancing Assignments**

43.) In December of 2005 and January of 2006, Mr. Williamson again expressed his interest in and qualifications for becoming Chief Information Security Officer for the Department of State.

44.) Despite knowing of Mr. Williamson's interest in and qualifications for the position as Chief Information Security Officer, Van Derhoff and Under Secretary Fore began arranging to

reclassify the position from the Senior Foreign Service to the Senior Executive Service in order to select John Streufert non-competitively. Streufert, a non-minority, was far less qualified and less experienced than Mr. Williamson, and lacked the professional qualifications for the position.

45.) Converting the position from the Senior Foreign Service to the Senior Executive Service would result in making Mr. Streufert eligible for the position and in eliminating Mr. Williamson from consideration as Chief Information Security Officer.

46.) On February 21, 2006, Mr. Williamson sent a Memorandum to Fore and Van Derhoff re-affirming his interest in the Chief Information Security Office position and formally requesting to be released or "curtailed" from his current assignment as acting Executive Director of the IRM Bureau in order to be formally considered. By practice, and in light of the fact that Mr. Williamson's position as Deputy Executive Director was not classified in the Senior Foreign Service, defendant had no legitimate reason for denying Mr. Williamson's request for curtailment of his assignment.

47.) Mr. Williamson's Memorandum was also transmitted by an e-mail to Van Derhoff, with a request that his assignment be curtailed in order to pursue other positions in the Senior Foreign Service without delay. Van Derhoff's senior appointments in November of 2005 and subsequent actions regarding the Chief Information Security Officer and other Senior Foreign Service

appointments in the IRM Bureau, including the selection of a below grade white male for a vacant Senior Foreign Service officer position, had already left Mr. Williamson without the possibility of finding a position in the Senior Foreign Service in IRM headquarters.

48.) Prior to transmitting the foregoing Memorandum, Mr. Williamson also met with Van Derhoff to discuss his candidacy for the position of Chief Information Security Officer. During his meeting with Van Derhoff, Mr. Williamson specifically discussed the State Department's history of institutional discrimination against African Americans with Van Derhoff; highlighted his pride in being only the second African American male to achieve the rank of Senior Foreign Service Officer in the IT field; and discussed Fore's racially derogatory statements that had been aired during her confirmation hearing. Mr. Williamson also stated that passing over a highly qualified African American Foreign Service Officer as Chief Information Security Officer would be perceived as validating that defendant's institutional race discrimination, particularly because it was well known in the IRM Bureau that Mr. Williamson was the leading candidate for the position as Chief Information Security Officer.

49.) Mr. Williamson's specific purpose in engaging in these exchanges was to ensure that Van Derhoff and Fore were fully aware that eliminating Mr. Williamson from consideration as Chief Information Security Officer despite his exceptional qualifications would amount to race discrimination. Van Derhoff,

for his part, viewed Mr. Williamson's statements as disruptive and threatening and reported them to the head of the State Department's Office of Civil Rights.

50.) On March 14, 2006, Van Derhoff denied Mr. Williamson's request to curtail his assignment, which made it impossible for Mr. Williamson to be considered for the position as Chief Information Security Officer or to seek other career enhancing assignments in the Senior Foreign Service at his grade level.

51.) Van Derhoff gave as his reason for denying Mr. Williamson's request the fact that Mr. Williamson was "absolutely essential" to the operation of the Executive Directorate, in order to provide "continuity and guidance to the new Executive Director." Van Derhoff's Memorandum also noted Mr. Williamson's supposed lack of a broad management background and his opinion that Mr. Williamson would gain such experience as Deputy Executive Director of IRM, both of which he knew to be untrue.

52.) In point of fact, at no time since Mr. Williamson began serving as acting Executive Director of IRM in January of 2006 has Van Derhoff filled the position on a permanent basis.

53.) Van Derhoff's Memorandum also noted Mr. Williamson's supposed lack of a broad management background, which was untrue and disproven by Mr. Williamson's selection as Deputy Executive Director of IRM and promotion into the Senior Foreign Service.

54.) During this same time period, Van Derhoff and Fore embarked on a plan to reorganize the IRM Bureau and abolish the Executive Directorate, overwhelmingly comprised of minority

employees and by far the largest contingent of minorities in the IRM Bureau.

55.) This reorganization would result in the effective elimination of Mr. Williamson's position as Deputy Executive Director and his position as acting Executive Director, and the assumption of his duties by a non-minority female employee.

56.) As a member of the senior-most IRM management and the acting Director of the Executive Office, Mr. Williamson's specific job duties entailed playing a lead role in planning and implementing organizational changes in the IRM Bureau.

57.) Nonetheless, without consulting with Mr. Williamson during the conceptual and planning stage, Van Derhoff began to implement the reorganization of the IRM Bureau and the abolition of the Executive Directorate and Mr. Williamson's position.

58.) On April 20, 2006, Van Derhoff wrote a Memorandum to the State Department's Executive Resources Board to formally request that the Chief Information Security Officer be reclassified into the Senior Executive Service and to advise the Board that Streufert had been identified to fill the position. In doing so, Van Derhoff also arranged for the Chief Information Security Officer position description to be altered to strengthenStreufert's candidacy.

59.) Fore chaired the Executive Resources Board, the body that had to approve the conversion of the Chief Information Security Officer to the Senior Executive Service.

60.) In early May of 2006, and prior to announcing the proposal to abolish the IRM Executive Directorate, Van Derhoff convened another regional IRM Bureau organizational conference and continued to marginalize the customary role of the Executive Director, still encumbered by Mr. Williamson.

61.) After learning that his position was slated to be abolished, on May 22, 2006, Mr. Williamson wrote a Memorandum e-mail to Van Derhoff requesting that he be detailed out of his position for the purpose of finding another, career-enhancing assignment in the Senior Foreign Service outside of IRM.

62.) On June 5, 2006, after Fore advised the Executive Resources Board that the IRM Chief Information Security Officer position would be filled by Mr. Streufert, a career member of the Senior Executive Service at the Agency for International Development, the Board approved the conversion of the position to the Senior Executive Service.

63.) Conversion of the State Department's Chief Information Security Officer from the Senior Foreign Service to the Senior Executive Service eliminated Mr. Williamson from consideration for the position. Further, unless the Chief Information Security Office position was reclassified in the civil service or the Senior Executive Service, Streufert would have been ineligible for it.

64.) On or about June 9, 2006, Mr. Williamson learned that Mr. Streufert had been selected as Chief Information Security

Officer for the Department of State in the Senior Executive Service.

65.) Due to defendant's refusal to curtail Mr. Williamson's assignment as Deputy Executive Director in the soon to be abolished IRM Executive Directorate and defendant's reclassification of the Chief Information Security Officer position, Mr. Williamson was prevented from seeking assignment to one of the few vacant IT professional positions in the Senior Foreign Service that had greater responsibilities, exposure, and opportunities for professional advancement than his position as Deputy Executive Director, which was not in the Senior Foreign Service.

66.) While this was transpiring, other prestigious and highly visible opportunities arose, such as heading a significant IRM program known as SMART that was being moved internally. Despite being well qualified by his experience in the predecessor to the SMART program, as a result of defendant's actions, Mr. Williamson was not interviewed or to his knowledge considered.

67.) Once the position of Deputy Executive Director of IRM was no longer functional and slated to be abolished, Mr. Williamson secured a detail in the Bureau of International Narcotics and Law Enforcement Affairs, a position with considerably less responsibility, supervisory authority, and opportunities for professional advancement than the position of Chief Information Security Officer or the Deputy Executive Director of IRM prior to its dissolution.

68.) As a result of defendant's actions, Mr. Williamson has been unable to secure a position at a level equivalent to the Chief Information Security Officer that has the same level of duties and responsibilities, career development, and opportunities for professional exposure and advancement.

### Exhaustion Of Administrative Remedies

69.) Mr. Williamson timely initiated the informal administrative EEO complaints process on May 30, 2006; filed a formal administrative complaint on July 12, 2006; and in those submissions and timely amendments, utilized the informal and formal administrative complaints processes concerning all of the employment actions and material adverse actions that comprise the subject matter of this Complaint. The Department of State issued a Report of Investigation into these matters on May 3, 2007.

70.) Through these actions, Mr. Williamson exhausted the administrative remedies available to him, because more than 180 days have elapsed since he filed and last amended his formal administrative complaint without the issuance of a Final Agency Decision.

### COUNT I
### (Race Discrimination)

71.) Plaintiff repeats the allegations contained in paragraphs 1 through 70 above, as though fully set forth here.

72.) Plaintiff's position as Deputy Executive Director of the IRM Bureau was, at all times while plaintiff encumbered it, classified in the Foreign Service.

73.) By virtue of plaintiff's appointment to the Senior Foreign Service, beginning in September of 2005, plaintiff was assigned to a position at a lower grade than his own personal rank.

74.) No later than November of 2005, defendant knew that the position of Chief Information Security Officer for the Department of State would be vacant by or before the summer of 2006.

75.) Plaintiff took all steps required of him to express interest in the position of Chief Information Security Officer for the Department of State beginning no later than November 2005, and reaffirmed those steps and his interest on one or more occasions before the position was filled on a permanent basis.

76.) In order to perfect his application for the position as Chief Information Security Officer, on February 21, 2006, plaintiff requested that his assignment as Deputy Executive Director of IRM be curtailed.

77.) By practice, and in light of the fact that Mr. Williamson's position as Deputy Executive Director was not classified in the Senior Foreign Service, defendant had no legitimate reason for denying Mr. Williamson's request for curtailment of his assignment.

78.) On March 14, 2006, defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director of IRM, and thereby rendered a formal application on plaintiff's part futile.

79.) Plaintiff possessed all qualifications and met all eligibility requirements to be appointed or reassigned to the position of Chief Information Security Officer for the Department of State, until defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director for IRM.

80.) Despite knowing of plaintiff's strong interest in being appointed or reassigned to the position of Chief Information Security Officer for the Department of State and of his superb qualifications for the position, defendant denied plaintiff's request for curtailment and did not appoint plaintiff to the position.

81.) Defendant's denial of plaintiff's request for curtailment resulted in his elimination for consideration for the position of Chief Information Security Officer.

82.) In taking the foregoing actions, defendant subjected plaintiff to adverse employment action, by refusing to appoint plaintiff as Chief Information Security Officer, a position in the Senior Foreign Service with significantly greater supervisory and substantive responsibilities and opportunities for professional exposure and advancement.

83.) In taking the foregoing actions, defendant discriminated against plaintiff on account of his race, which is African American.

84.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing actions.

85.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT II
### (Race Discrimination)

86.) Plaintiff repeats the allegations contained in paragraphs 1 through 85 above, as though fully set forth here.

87.) Plaintiff's position as Deputy Executive Director of the IRM Bureau was, at all times while plaintiff encumbered it, classified in the Foreign Service.

88.) By virtue of plaintiff's appointment to the Senior Foreign Service, beginning in September of 2005, plaintiff was assigned to a position at a lower grade than his own personal rank.

89.) No later than November of 2005, defendant knew that the position of Chief Information Security Officer for the Department of State would be vacant by or before the summer of 2006.

90.) Plaintiff took all steps required of him to express interest in the position of Chief Information Security Officer for the Department of State beginning no later than November 2005, and reaffirmed those steps and his interest on one or more occasions before the position was filled on a permanent basis.

91.) In order to perfect his application for the position as Chief Information Security Officer, on February 21, 2006,

plaintiff requested that his assignment as Deputy Executive Director of IRM be curtailed.

92.) By practice, and in light of the fact that Mr. Williamson's position as Deputy Executive Director was not classified in the Senior Foreign Service, defendant had no legitimate reason for denying Mr. Williamson's request for curtailment of his assignment.

93.) On March 14, 2006, defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director of IRM, and thereby rendered a formal application on plaintiff's part futile.

94.) On June 5, 2006, defendant reclassified the position of Chief Information Security Officer from the Senior Foreign Service to the Senior Executive Service.

95.) Plaintiff possessed all qualifications and met all eligibility requirements to be appointed or reassigned to the position of Chief Information Security Officer for the Department of State, until defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director for IRM and reclassified the position in the Senior Executive Service.

96.) Despite knowing of plaintiff's interest in being appointed or reassigned to the position of Chief Information Security Officer for the Department of State and of his qualifications for the position, defendant denied plaintiff's request for curtailment, reclassified the position to the Senior Executive Service, and appointed John Streufert, a less qualified

non-minority from a different agency, to the position on or about June 5, 2006.

97.) In appointing John Streufert instead of plaintiff as Chief Information Security Officer for the Department of State, defendant subjected plaintiff to adverse employment action, by not selecting him for a position in the Senior Foreign Service with significantly greater supervisory and substantive responsibilities, and opportunities for professional exposure and advancement.

98.) In taking the foregoing actions, defendant discriminated against plaintiff on account of his race, which is African American.

99.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing actions.

100.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT III
### (Race Discrimination)

101.) Plaintiff repeats the allegations contained in paragraphs 1 through 100 above, as though fully set forth here.

102.) Plaintiff's position as Deputy Executive Director of the IRM Bureau was, at all times while plaintiff encumbered it, classified in the Foreign Service.

103.) By virtue of plaintiff's appointment to the Senior Foreign Service, beginning in September of 2005, plaintiff was assigned to a position at a lower grade than his own personal rank.

104.) In order to perfect his application for positions in and further promotion within the Senior Foreign Service, on February 21, 2006, plaintiff requested that his assignment as Deputy Executive Director of IRM be curtailed.

105.) By practice, and in light of the fact that Mr. Williamson's position as Deputy Executive Director was not classified in the Senior Foreign Service, defendant had no legitimate reason for denying Mr. Williamson's request for curtailment of his assignment.

106.) On March 14, 2006, defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director of IRM, and thereby rendered a formal application on plaintiff's part for positions in the Senior Foreign Service futile.

107.) Plaintiff possessed all qualifications and met all eligibility requirements to be appointed or reassigned to a Senior Foreign Service position, until defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director for IRM on March 14, 2006.

108.) Despite knowing of plaintiff's strong interest in being appointed or reassigned to a Senior Foreign Service position and of his superb qualifications for such positions, defendant denied plaintiff's request for curtailment and thereby

rendered him ineligible for a Senior Foreign Service Officer position.

109.) Defendant's denial of plaintiff's request for curtailment resulted in his elimination for consideration for a Senior Foreign Service Officer position.

110.) In taking the foregoing actions, defendant subjected plaintiff to adverse employment action, by eliminating him from positions in the Senior Foreign Service with significantly greater supervisory and substantive responsibilities and opportunities for professional exposure and advancement than plaintiff's position as Deputy Executive Director of IRM.

111.) In taking the foregoing actions, defendant discriminated against plaintiff on account of his race, which is African American.

112.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing actions.

113.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT IV
### (<u>Retaliation</u>)

114.) Plaintiff repeats the allegations contained in paragraphs 1 through 113 above, as though fully set forth here.

115.) Plaintiff's position as Deputy Executive Director of the IRM Bureau was, at all times while plaintiff encumbered it, classified in the Foreign Service.

116.) By virtue of plaintiff's appointment to the Senior Foreign Service, beginning in September of 2005, plaintiff was assigned to a position at a lower grade than his own personal rank.

117.) No later than November of 2005, defendant knew that the position of Chief Information Security Officer for the Department of State would be vacant by or before the summer of 2006.

118.) Plaintiff took all steps required of him to express interest in the position of Chief Information Security Officer for the Department of State beginning no later than November 2005, and reaffirmed those steps and his interest on one or more occasions before the position was filled on a permanent basis.

119.) In order to perfect his application for the position as Chief Information Security Officer, on February 21, 2006, plaintiff requested that his assignment as Deputy Executive Director of IRM be curtailed.

120.) On that same date, plaintiff expressed his opposition to defendant's unlawful race discrimination against African Americans and against him, as an African American, should he be denied the position of Chief Information Security Officer.

121.) Plaintiff's expression of opposition to defendant's unlawful employment practice was reasonable and made in good faith.

122.) By practice, and in light of the fact that Mr. Williamson's position as Deputy Executive Director was not classified in the Senior Foreign Service, defendant had no legitimate reason for denying Mr. Williamson's request for curtailment of his assignment.

123.) On March 14, 2006, defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director of IRM, and thereby rendered a formal application on plaintiff's part futile.

124.) Plaintiff possessed all qualifications and met all eligibility requirements to be appointed or reassigned to the position of Chief Information Security Officer for the Department of State, until defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director for IRM.

125.) Despite knowing of plaintiff's strong interest in being appointed or reassigned to the position of Chief Information Security Officer for the Department of State and of his superb qualifications for the position, defendant denied plaintiff's request for curtailment and did not appoint plaintiff to the position.

126.) Defendant's denial of plaintiff's request for curtailment resulted in his elimination for consideration for the position of Chief Information Security Officer.

127.) In taking the foregoing actions, defendant subjected plaintiff to material adverse action.

128.) In taking the foregoing actions, defendant retaliated against plaintiff on account of his protected activity, in particular opposing defendant's unlawful employment practice of discriminating against plaintiff on account of his race by not selecting plaintiff as Chief Security Information Office for the Department of State.

129.) In taking the foregoing actions, defendant violated the "opposition clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3(a)), by retaliating against plaintiff in the manner described above.

130.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT V
### (Retaliation)

131.) Plaintiff repeats the allegations contained in paragraphs 1 through 130 above, as though fully set forth here.

132.) Plaintiff's position as Deputy Executive Director of the IRM Bureau was, at all times while plaintiff encumbered it, classified in the Foreign Service.

133.) By virtue of plaintiff's appointment to the Senior Foreign Service, beginning in September of 2005, plaintiff was

assigned to a position at a lower grade than his own personal rank.

134.) No later than November of 2005, defendant knew that the position of Chief Information Security Officer for the Department of State would be vacant by or before the summer of 2006.

135.) Plaintiff took all steps required of him to express interest in the position of Chief Information Security Officer for the Department of State beginning no later than November 2005, and reaffirmed those steps and his interest on one or more occasions before the position was filled on a permanent basis.

136.) In order to perfect his application for the position as Chief Information Security Officer, on February 21, 2006, plaintiff requested that his assignment as Deputy Executive Director of IRM be curtailed.

137.) On that same date, plaintiff expressed his opposition to defendant's unlawful race discrimination against African Americans and against him, as an African American, should he be denied the position of Chief Information Security Officer.

138.) Plaintiff's expression of opposition to defendant's unlawful employment practice was reasonable and made in good faith.

139.) By practice, and in light of the fact that Mr. Williamson's position as Deputy Executive Director was not classified in the Senior Foreign Service, defendant had no reason

for denying Mr. Williamson's request for curtailment of his assignment.

140.) On March 14, 2006, defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director of IRM, and thereby rendered a formal application on plaintiff's part futile.

141.) On June 5, 2006, defendant reclassified the position of Chief Information Security Officer from the Senior Foreign Service to the Senior Executive Service.

142.) Plaintiff possessed all qualifications and met all eligibility requirements to be appointed or reassigned to the position of Chief Information Security Officer for the Department of State, until defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director for IRM and reclassified the position in the Senior Executive Service.

143.) Despite knowing of plaintiff's interest in being appointed or reassigned to the position of Chief Information Security Officer for the Department of State and of his qualifications for the position, defendant denied plaintiff's request for curtailment, reclassified the position to the Senior Executive Service, and appointed John Streufert, a less qualified non-minority from a different agency, to the position on or about June 5, 2006.

144.) In appointing John Streufert instead of plaintiff as Chief Information Security Officer for the Department of State, defendant subjected plaintiff to material adverse action, by not

selecting him for a position with significantly greater supervisory and substantive responsibilities, and opportunities for professional exposure and advancement.

145.) In taking the foregoing actions, defendant retaliated against plaintiff on account of his protected activity, in particular opposing defendant's unlawful employment practice of discriminating against plaintiff on account of his race by not selecting plaintiff as Chief Security Information Office for the Department of State.

146.) In taking the foregoing actions, defendant violated the "opposition clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2003-3(a)), by retaliating against plaintiff in the manner described above.

147.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT VI
### (Retaliation)

148.) Plaintiff repeats the allegations contained in paragraphs 1 through 147 above, as though fully set forth here.

149.) Plaintiff's position as Deputy Executive Director of the IRM Bureau was, at all times while plaintiff encumbered it, classified in the Foreign Service.

150.) By virtue of plaintiff's appointment to the Senior Foreign Service, beginning in September of 2005, plaintiff was

assigned to a position at a lower grade than his own personal rank.

151.) No later than November of 2005, defendant knew that the position of Chief Information Security Officer for the Department of State would be vacant by or before the summer of 2006.

152.) Plaintiff took all steps required of him to express interest in the position of Chief Information Security Officer for the Department of State beginning no later than November 2005, and reaffirmed those steps and his interest on one or more occasions before the position was filled on a permanent basis.

153.) In order to perfect his application for the position as Chief Information Security Officer, on February 21, 2006, plaintiff requested that his assignment as Deputy Executive Director of IRM be curtailed.

154.) On that same date, plaintiff expressed his opposition to defendant's unlawful race discrimination against African Americans and against him, as an African American, should he be denied the position of Chief Information Security Officer.

155.) Plaintiff's expression of opposition to defendant's unlawful employment practice was reasonable and made in good faith.

156.) By practice, and in light of the fact that Mr. Williamson's position as Deputy Executive Director was not classified in the Senior Foreign Service, defendant had no

legitimate reason for denying Mr. Williamson's request for curtailment of his assignment.

157.) On March 14, 2006, defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director of IRM, and thereby rendered a formal application on plaintiff's part futile.

158.) Plaintiff possessed all qualifications and met all eligibility requirements to be appointed or reassigned to the position of Chief Information Security Officer for the Department of State, until defendant denied plaintiff's request to curtail his assignment as Deputy Executive Director for IRM.

159.) Despite knowing of plaintiff's strong interest in being appointed or reassigned to a Senior Foreign Service position and of his superb qualifications for such positions, defendant denied plaintiff's request for curtailment and thereby rendered him ineligible for a Senior Foreign Service Officer position.

160.) Defendant's denial of plaintiff's request for curtailment resulted in his elimination for consideration for a Senior Foreign Service Officer position.

161.) In taking the foregoing actions, defendant subjected plaintiff to adverse employment action, by eliminating him from positions in the Senior Foreign Service with significantly greater supervisory and substantive responsibilities and opportunities for professional exposure and advancement than plaintiff's position as Deputy Executive Director of IRM.

162.) In taking the foregoing actions, defendant violated the "opposition clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2003-3(a)), by retaliating against plaintiff in the manner described above.

163.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, plaintiff Terrence K. Williamson respectfully requests that the Court enter judgment in her favor and award him the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further violations.

B.    An Order retroactively appointing plaintiff to the position of Chief Information Security Officer for the Department of State; to another equivalent; or to the position of Executive Director in the IRM Bureau with duties and responsibilities commensurate with its classification as a position in the Senior Executive Service.

C.    An Order immediately promoting plaintiff to Senior Foreign Service one grade above his level at the time of entry of

judgment and granting plaintiff six years until his next required promotion.

D.    Compensatory damages in an amount to be determined at trial to compensate plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, and loss of enjoyment of life caused by defendant's unlawful actions.

E.    Backpay.

F.    Record correction.

G.    The attorneys' fees and costs incurred by plaintiff.

H.    Such other relief as may be just and appropriate.

**JURY DEMAND**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

Robert C. Seldon, Esq.
  D.C. Bar No. 245100
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 305
Washington, D.C.  20004
(202) 955-6968

By: _____
       Counsel for Plaintiff

*H-1471*
*07-1471*
*RJL*

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

Terrence K. Williamson

88888

**DEFENDANTS**

Condoleezza Rice, Secretary of State

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert C. Seldon, Esq.; Molly E. Buie, Esq.
Robert C. Seldon & Associates, PC
1319 F Street, NW, Suite 305
Washington, DC 20004 (202) 955-6968

Case: 1:07-cv-01471
Assigned To : Leon, Richard J.
Assign. Date : 8/14/2007
Description: Employ. Discrim.

*JURY ACTION*

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 3 Federal Question
   (U.S. Government Not a Party)

◉ 2 U.S. Government
   Defendant

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
   Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**      OR      ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
   defendant
☐ 871 IRS-Third Party 26
   USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
   of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
   Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
   Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
   Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
   Exchange
☐ 875 Customer Challenge 12 USC
   3410
☐ 900 Appeal of fee determination
   under equal access to Justice
☐ 950 Constitutionality of State
   Statutes
☐ 890 Other Statutory Actions (if
   not administrative agency
   review or Privacy Act

③

| ○ **G. Habeas Corpus/ 2255** | ⊗ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Discrimination and retaliation in federal employment over non-promotion, Title VII, 42 U.S.C. 2000e-16.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 300,000.00<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE   August 14, 2007       SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.