UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERRENCE K. WILLIAMSON, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) Civil Case No. 07-1471 (RJL) |
| HILLARY RODHAM CLINTON, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION
(September 24, 2010) [#17]

Plaintiff Terrence Williamson ("plaintiff" or "Williamson"), an employee of the United States Department of State, brings this action against Hillary Rodham Clinton in her capacity as Secretary of State, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Before the Court is defendant's Motion for Summary Judgment. After careful consideration of the parties' pleadings, the relevant law, and the entire record herein, the defendant's motion is GRANTED.

## BACKGROUND

Plaintiff is an African-American male and long-time employee of the Foreign Service in the U.S. Department of State. Pl. Opp'n, Williamson Decl. ("Williamson Decl.") ¶¶ 1-2. In May 2005 plaintiff, who works in the field of Information Technology ("IT"), was assigned to a two-year term as Deputy Director for the Executive Directorate ("EX") of the State Department's Bureau of Information Resources Management

1

("IRM"). Compl. ¶ 20; Def.'s Mot. Summ. J., Ex. 2, Dec. 9, 2006 ("Van Derhoff Decl. 1") ¶ 9. Shortly thereafter, in September 2005, plaintiff was promoted to the Senior Foreign Service ("SFS"). Williamson Decl. ¶ 18; Van Derhoff Decl. 1 ¶ 11. At that time, the position of Chief Information Security Officer ("CISO"), an SFS grade position, which oversaw the Information Assurance ("IA") arm of the IRM, was being advertised within the Foreign Service. Pl. Opp'n, Ex. 5, Dec. 18, 2006 ("Van Derhoff Decl. 2") ¶¶ 18-19. As an SFS officer, plaintiff was qualified for the position of CISO. Compl. ¶ 34. Nevertheless, plaintiff was ineligible to bid on any new position without first obtaining a curtailment of his two-year term as Deputy Director, which was not scheduled to expire until May 2007. Compl. ¶ 46.

On February 21, 2006, therefore, plaintiff requested a curtailment of his position as Deputy Director. Compl. ¶ 46. Plaintiff made his request, both in writing and in person, to James Van Derhoff ("Van Derhoff"), the State Department's newly-appointed Chief Information Officer ("CIO"), who was in charge of hiring senior IT personnel, including the CISO. Van Derhoff Decl. 1 ¶¶ 47-51. Van Derhoff, a white male, was designated to be the State Department's next CIO in the Fall of 2005, officially assuming the position January 2006. Van Derhoff Decl. 1 ¶¶ 16, 19. During plaintiff's meeting with Van Derhoff, plaintiff expressed his view that as a qualified African-American candidate, his non-selection for the CISO position would reflect poorly on the State Department. Compl. ¶ 48. Indeed, plaintiff specifically commented to Van Derhoff that he was aware that the State Department's Undersecretary for Management Henrietta Fore ("the Undersecretary") had been questioned during her confirmation hearing about

racially insensitive remarks she had made in the past. *Id.* As a result, plaintiff contended that his appointment to the position of CISO would be consistent with the Undersecretary's stated commitment to promote diversity within the Agency. *Id.*

On March 14, 2006, Van Derhoff denied plaintiff's curtailment request. Compl. ¶ 50. Van Derhoff cited two reasons for his decision: (1) plaintiff was indispensible in his current position because he was acting not only as Deputy Director of IRM/EX, but also, since January 2006, as acting Director; and (2) Van Derhoff was looking for someone with broader management experience for the CISO role. Compl. ¶ 51; Van Derhoff Decl. 1 ¶¶ 57-58. In addition, as plaintiff was aware, Van Derhoff had been in active discussions with John Streufert ("Streufert"), the acting CIO of U.S. Agency for International Development ("USAID"), regarding the CISO position. Van Derhoff Decl. 1 ¶ 47. Indeed, at the time plaintiff approached Van Derhoff regarding his curtailment, Van Derhoff was leaning in favor of hiring Streufert. Def.'s Mot. Summ. J., Ex. 5, Williamson Dep. 188:2-189:2; 189:13-17.

At this time of these discussions with Williamson, Van Derhoff was also completing the hiring of a Director for the State Department's State Messaging and Archive Retrieval Toolset ("SMART") program. *See* Van Derhoff Decl. 1 ¶ 77. Although plaintiff did not specifically pursue this position, his eligibility for it would have also required a curtailment of his current assignment. *See* Def.'s Stmt. of Facts ("Def. Stmt") ¶ 84. After consideration of all IRM senior management, including the plaintiff, Van Derhoff hired Dr. Glen Johnson, who was, amongst other things, a charter

member of the SMART Steering Committee, for the position. Van Derhoff Decl. 1 ¶¶ 82, 96.

On April 20, 2006, having decided on Streufert to take the CISO position, Van Derhoff made a written request to reclassify the CISO position from SFS to Senior Executive Service ("SES"), which is part of the Civil Service. Compl. ¶ 88; Van Derhoff Decl. 2 ¶ 21. Van Derhoff cited two reasons for his request. The first reason was to ensure a balance between SFS and SES employees within the senior management positions under his supervision. The second reason was to enable Streufert, who was an SES employee, to officially take the CISO position. Van Derhoff Decl. 2 ¶ 21. On June 5, 2006, the reclassification of the CISO position from SFS to SES was approved and in mid-June Streufert was officially hired as CISO. Def. Stmt. ¶¶ 131-32.

Meanwhile, on April 27, 2006, the Director of the State Department's Administration Bureau ("A Bureau") submitted a proposal to Van Derhoff to consolidate the administrative services of the IRM/EX into the A Bureau. Van Derhoff Decl. 1 ¶ 66. This proposal was part of an agency-wide effort to move towards a "shared services environment" in which administrative functions were to be consolidated in various "Centers of Excellence." *Id.* ¶¶ 62, 64. Although Van Derhoff had heard various recommendations to move certain functions out of the IRM/EX bureau, including one recommendation from the plaintiff, himself, there is no evidence that the proposal, much less the decision, to dissolve the IRM/EX was made before late April. *See id.* ¶¶ 63-65. On May 15, 2006, after reviewing the proposal, Van Derhoff announced his plan execute the consolidation to the IRM/EX management, including the plaintiff. Def. Stmt. ¶ 140.

4

After unsuccessfully objecting to the plan, Williamson requested an immediate detail out of the Deputy Director position. *Id.* ¶¶ 142, 145; *see also* Williamson Decl. ¶ 26. Within three days, Van Derhoff granted plaintiff's request. Def. Stmt. ¶ 145. On May 30, 2006, plaintiff contacted an Equal Employment Opportunity ("EEO") counselor to initiate administrative proceedings. Compl. ¶ 69.

## ANALYSIS

Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment shall be granted if the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, in opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (citing Fed. R. Civ. P. 56(e)). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient." *Id.* at 255. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Plaintiff brings his claim of race discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Title VII establishes two elements for an employment discrimination claim: "(i) the plaintiff suffered an adverse

employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e-2(a)(1)). Likewise, to show retaliation, the plaintiff must have suffered "(i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).

Generally, discrimination and retaliation claims are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In an action such as this one, however, where the employer has asserted a legitimate, non-discriminatory, non-retaliatory reason for an adverse employment action, our Circuit has simplified the District Court's inquiry to: "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis," such as on the basis of race or as retaliation for a protected activity under Title VII. *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008); *Brady*, 520 F.3d at 494.[1] In other words, to prove pretext, the plaintiff must show "*both* that the reason was false, *and* that

---

[1] Defendant also argues that summary judgment must be granted because plaintiff failed to exhaust administrative remedies. Def. Mot. Summ. J. 13-18. Indeed, exhaustion of administrative remedies is necessary prior to bringing any action under Title VII in Federal Court. *Greer v. Paulson*, 505 F.3d 1306, 1316-17 (D.C. Cir. 2007). Plaintiff, however, argues that he had no reasonable knowledge of the discrimination until defendant told plaintiff that IRM/EX would be dissolved on May 26, 2006, four days before plaintiff sought EEO counseling, thereby initiating administrative proceedings. Pl. Opp'n 17. While the reasonableness of plaintiff's claim is in question, this Court need not resolve that issue here.

discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). Unfortunately for the plaintiff, he did not do so here.

Plaintiff challenges the defendant's denial of plaintiff's curtailment request, refusal to appoint plaintiff to the CISO position, reclassification of the CISO position from SFS to SES, appointment of Streufert to the CISO position, and failure to consider plaintiff for other SFS grade positions, such the Director of the SMART program. Defendant raises the question, in turn, of whether these actions were, in fact, adverse to the plaintiff. Def. Mot. at 18-21. This question, however, need not be resolved here because the plaintiff has failed to produce sufficient evidence for a reasonable jury to find that defendant's legitimate, non-discriminatory, non-retaliatory explanation is false and that, instead, defendant's real reason was discrimination or retaliation. *See Brady*, 520 F.3d at 494; *Adeyemi*, 525 F.3d at 1226. Simply put, defendant's reasons for its actions vis-à-vis plaintiff reflect staffing and institutional changes implemented by a new CIO (i.e. Van Derhoff) that are reasonable evaluations of the needs, goals and challenges facing various IT functions and bureaus within the State Department.

Plaintiff claims, nonetheless, that Van Derhoff is "lying" with regard to his reasoning. Pl. Opp'n at 26-28. I disagree. With respect to plaintiff's failure to secure the CISO position, Van Derhoff states that he denied plaintiff's curtailment because he believed that plaintiff was critical in his then-current position as Deputy Director of the IRM/EX. Van Derhoff Decl. 1 ¶ 57. Indeed, Van Derhoff had named plaintiff acting Director of IRM/EX in January 2006, shortly after taking over the role of CIO, making plaintiff the only senior manager in the IRM/EX. *Id.* ¶ 13. Further, Van Derhoff stated

7

that he wanted plaintiff, with his institutional knowledge and experience, to help transition a new Director whenever that Director was hired. *Id.* ¶ 57.[2]

Plaintiff's argument that Van Derhoff could not have honestly believed that he needed to keep the plaintiff in his position because Van Derhoff ultimately decided to consolidate the IRM/EX into the A Bureau is, at best, unpersuasive. Pl. Opp'n at 26-27. While the record does indicate that Van Derhoff was discussing the idea of "shared services" throughout the relevant period, plaintiff has offered *no* evidence to indicate that Van Derhoff planned on taking steps to substantially limit plaintiff's position, much less make his position obsolete, at the time he denied plaintiff's curtailment. *See* Van Derhoff Decl. 1 ¶¶ 62-66. To the contrary, on March 7, 2006, around the time Van Derhoff made the decision to deny plaintiff's request for curtailment, the IRM/EX Director position was officially advertised within the Civil Service. Van Derhoff Decl. 1 ¶ 56. Further, Van Derhoff did not receive the proposal from the Director of the A Bureau outlining a plan to consolidate the IRM/EX into the A Bureau until April 27, 2006; after the process of re-classifying the CISO position from SFS to SES was already underway. *See id.* ¶ 66. Therefore, because defendant's explanation is reasonably based on the evidence, there is "no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d 495.

---

[2] Plaintiff also claims that by denying his curtailment, Van Derhoff foreclosed his possible consideration from this and other SFS grade positions. As noted herein, however, Van Derhoff has provided legitimate reasons for denying plaintiff's curtailment request. Further, Van Derhoff claims, and plaintiff does not refute, that plaintiff was, in fact, considered for the position as SMART director.

8

Plaintiff also claims that Van Derhoff is not being honest with regard to the reclassification of the CISO position from SFS to SES. Pl. Opp'n 27-28. In particular, plaintiff points to a meeting on June 5, 2006 in which the Undersecretary stated that she generally would like to see more SFS officers in the "functional bureaus." *Id.* at 27. Plaintiff then notes that shortly thereafter, the Undersecretary supported the conversion of the CISO position – which heads a functional bureau, the IRM/IA – from SFS to SES because Streufert was, according to the Undersecretary, the "right person at the right time." *Id.* at 27-28. It is difficult to see, however, how this evidence establishes pretext. Van Derhoff has explained that his decision was based both on the need to strike a balance between SES and SFS officers, noting that his senior team was made up of almost all Foreign Service members, Van Derhoff Decl. 1 ¶ 45, *and* on the need to accommodate Streufert's candidacy for the CISO position, Van Derhoff Decl. 1 ¶ 43. Because the Undersecretary's comments were general, they are not necessarily inconsistent with the hiring-specific determination to reclassify the CISO position. Plaintiff's evidence is, if anything, far too attenuated to lead a reasonable jury to question Van Derhoff's stated reasoning.

Plaintiff next claims that defendant is disingenuous in his assessment of plaintiff's qualifications. Pl. Opp'n 30-33. Importantly, however, Van Derhoff did not claim that plaintiff's qualifications were in any way unimpressive. *See* Van Derhoff Decl. 1 ¶ 58. Instead, Van Derhoff stated that he was looking to make specific changes and did not believe that plaintiff had the management experience necessary to implement those changes. *See* Van Derhoff Decl. 2 ¶ 16. Further, Van Derhoff stated that he did not

9

believe that plaintiff, who had close ties with the outgoing CISO, Jane Scott Norris ("Scott Norris"), would be willing and able to change the direction and culture of the IRM/IA. *See* Van Derhoff Decl. 1 ¶¶ 59-61.

Plaintiff provides no evidence to undermine this explanation except for evidence of his own qualifications, which Van Derhoff does not refute. *See* Pl. Opp'n, Norris Decl. ¶¶ 41-46. Plaintiff further claims that Van Derhoff was mistaken in his belief that plaintiff was not supportive of bringing change to the IRM/IA. Williamson Decl. ¶¶ 22-25. Plaintiff admits, however, that he opposed certain changes, namely the implementation of customer committees, advocated by Van Derhoff. Plaintiff then explains why his opposition was justified, but in so doing provides no evidence to indicate that Van Derhoff's fear that plaintiff would continue the culture and policies of Scott Norris was, in fact, pretext. *Id.* Instead, plaintiff ironically provides evidence to explain why Scott Norris's policies were justified. *See* Pl. Opp'n Norris Decl. ¶¶ 35-40.

Likewise, while plaintiff raises questions regarding Streufert's experience and lack of certifications, plaintiff fails to address Van Derhoff's express reasons for believing Streufert was the best candidate for the CISO position. *See* Pl. Opp'n 33-35. Notably, Van Derhoff believed Streufert capable and willing to turn around the IRM/IA after years of poor performance, improve its scores and implement cultural change. Van Derhoff Decl. 2 ¶ 24. Moreover, irrespective of plaintiff's claims to the contrary, Van Derhoff's belief that Streufert's qualifications were impressive was reasonable. *Id.*

Ultimately, this Court should not, and may not, impose its own views on the factors that should be taken into account when making a particular hiring decision.

*Jackson v. Gonzales*, 496 F.3d 703, 709 (D.C. Cir. 2007) ("Particularly given the dynamic nature of the hiring process, moreover, we have also stated that we will not second-guess how an employer weighs particular factors in the hiring decision."). Plaintiff's evidence is thus only relevant in so far as it may weaken Van Derhoff's justification. *See id.* Here, the evidence offered simply fails to rise to the level necessary for a reasonable jury to find that Van Derhoff's reasons were pretext. *See id.*[3]

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment [#17]. An order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge

---

[3] Plaintiff's remaining evidence of discrimination is largely irrelevant and clearly insufficient to meet plaintiff's burden. For instance, plaintiff claims disparate treatment, Pl. Opp'n 37, without showing that others were, in fact, similarly situated. *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (relevant aspects of employment must be "nearly identical" to show that two employees are similarly situated). Plaintiff also points to the proximity in time of the events in question, Pl. Opp'n at 35-36, and to the Undersecretary's racially insensitive remarks made before she was confirmed as the Undersecretary for Management, Pl. Opp'n at 36-37. Without more, however, this evidence is simply not sufficient to defeat summary judgment. *See Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) ("positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine."); *Talavera v. Fore*, 648 F. Supp. 2d 118, 132 (D.D.C. 2009) (finding that unrelated remarks, even when made by a decision-maker, cannot create a triable issue of discrimination).